WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Catherine Brumfield,           )
                               )
                Plaintiff,     )      No. CIV-05-1381 PHX RCB
                               )
        vs.                    )          O R D E R
                               )
JoAnne B. Barnhart,            )
Commissioner of Social         )
Security,                      )
                               )
                Defendant.     )
_____)

     On May 10, 2005, Plaintiff Catherine Brumfield, ("Brumfield")

filed her complaint in this case.  Complaint (doc. 1).  Brumfield

seeks review in this court of a decision rendered by an

Administrative Law Judge ("ALJ") of the Social Security

Administration ("SSA"), who denied her disability and disability

benefits.  Id. at 2-3.  A motion for summary judgment was filed on

September 13, 2005, which provides the basis for Brumfield's appeal

of the ALJ's findings.  Mot. (doc. 5).  On November 8, 2005,

Defendant JoAnne B. Barnhart, Commissioner of Social Security ("the

Commissioner"), filed a response and cross-motion for summary

judgment, seeking for this court to affirm the ALJ's decision. Resp. & Cross-Mot. (doc. 12).  These motions were fully briefed on December 2, 2005.  Reply (doc. 19).  The court, having carefully considered the arguments presented by the parties, as well as the Administrative Record, now rules.

**I. Facts**

    **A. Procedural History**

    On October 16, 2002, Brumfield filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  Administrative Record ("A.R.") (doc. 3) at 20.  The application was denied initially and on reconsideration.  <u>Id.</u>  Thereafter, a hearing was held on May 10, 2004, before Administrative Law Judge ("ALJ") Michael J. Cianci, Jr.  <u>Id.</u> at 27.

    On June 9, 2004, the ALJ issued a decision in which he found Brumfield not disabled within the meaning of the Act.  <u>Id.</u> Specifically, the ALJ found that Brumfield's carpal tunnel syndrome, fibromyalgia, and depression were "severe."  <u>Id.</u> at 26. However, the ALJ concluded that despite these impairments, Brumfield had the residual functional capacity to perform sedentary and light work activity with certain restrictions.  A.R. (doc. 3) at 26.

> [T]he undersigned finds the claimant retains the following residual functional capacity: 10 pounds frequently and 20 pounds occasionally, sit for 6 hours in an 8-hour workday and stand and/or walk 6 hours; with frequent feeling, fine and gross manipulation and occasional climbing; also frequent climbing of ramps and stairs, frequent balancing, crouching, crawling and kneeling; avoid extreme temperatures and vibrations.  The claimant is also limited to low stress jobs, with low production quotas.

1  Id. at 24-25.  The ALJ determined that Brumfield could return to
2  the occupations she had previously performed and was not under a
3  disability as defined in the Social Security Act.  Id. at 25, 26.
4      Brumfield requested review by the Appeals Council, however,
5  the Appeals Council denied this request and adopted the decision as
6  the Commissioner's final decision.  Complaint (doc. 1) at 2.
7  Brumfield then commenced this action for judicial review pursuant
8  to 42 U.S.C. § 405(g).  Id. at 1.  Brumfield seeks for this Court
9  to "remand this case for award of benefits," or, in the
10 alternative, "remand this matter to the Commissioner for further
11 administrative proceedings[.]"  Mot. (doc. 5) at 19-20.

12     **B. Background Facts**

13     At the time of the ALJ's decision, Brumfield was a 53-year-old
14 individual with a high school equivalency education.  A.R. (doc. 3)
15 at 21.  Her past work experience includes employment as a file
16 clerk, proof clerk and sales associate.  Id.  She alleges that she
17 became disabled on September 20, 2002.  Id.  She claimed carpal
18 tunnel syndrome and fibromyalgia, with fatigue and swelling.  Id.
19 She reported pain in her shoulders, arms, legs and back, numbness,
20 and problems gripping or grasping with her hands.  Id.  She also
21 reported problems sleeping.  A.R. (doc. 3) at 21.

22 **II. Standard of Review**

23     Both parties have moved for summary judgment under Rule 56 of
24 the Federal Rules of Civil Procedure.  Summary judgment is
25 appropriate when "there is no genuine issue as to any material fact
26 and...the moving party is entitled to judgment as a matter of law."
27 Fed. R. Civ. P. 56(c).

28     The Commissioner's denial of benefits is subject to judicial

1  review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The

2  decision of the Commissioner must be affirmed if it is supported by

3  substantial evidence and the Commissioner applied the correct legal

4  standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

5  2005); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003).

6  Factual determinations by the Commissioner, acting through an ALJ,

7  must be affirmed if supported by substantial evidence.  See Celaya

8  v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater,

9  94 F.3d 520, 521 (9th Cir. 1996).

10      Substantial evidence is "such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion."

12  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a

13  "mere scintilla," but less than a preponderance.  Id.; Connett v.

14  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).

15       In reviewing the Commissioner's decision, the district court

16  must "consider the evidence as a whole, weighing both the evidence

17  that supports and the evidence that detracts from the

18  Commissioner's conclusion."  Smolen v. Chater, 80 F.3d 1273, 1279

19  (9th Cir. 1996).  If the evidence can reasonably support either

20  affirming or reversing the Commissioner's conclusion, the district

21  court may not substitute its judgment for that of the Commissioner

22  and must affirm.  See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th

23  Cir. 2005); McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir.

24  2002); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

25      As discussed above, the critical issue at the heart of this

26  proceeding is whether Brumfield is, in fact, disabled under the

27  Act.  The ALJ answered this question in the negative.  In order to

28  qualify for the benefits sought, Brumfield had to show the ALJ

that her impairments were so functionally limiting as to prevent
her from engaging in any substantial gainful activity for at least
twelve consecutive months.  42 U.S.C. § 423(d)(1)(A)(definition of
"Disability").  Brumfield shoulders the burden of proving her
disability.  <u>Taylor v. Heckler</u>, 765 F.2d 872, 875 (9th Cir. 1985);
<u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995)("In
determining the ultimate issue of disability, claimant bears the
burden of proving she is disabled.").

**III. Discussion**

Brumfield asserts that she is entitled to summary judgment
for six separate reasons.  Mot. (doc. 5) at 2-18.  She claims that
the ALJ erred by (1) "rejecting" the opinions of treating
physicians; (2) basing the determination of residual function
capacity on the assessment of a nonexamining state agency
physician who did not testify at trial or review all of the
evidence of record; (3) requiring "objective evidence of
significant fatigue;" (4) basing a hypothetical question to the
vocational expert on a person limited to "lower-stress type work
with no high production quotas" instead of determining a function-
by-function mental residual functional capacity assessment at
steps four and five of the sequential evaluation process; (5)
mischaracterizing the opinion of Dr. Steven C. Hirdes, Ed.D., an
examining psychologist; and (6) failing to provide clear and
convincing reasons for discounting Brumfield's testimony.  <u>Id.</u> at
2-3.  Defendant contests all of these assertions.  Resp. & Cross-
Mot. (doc. 12).  The Court will address each issue in turn.

**A. Opinions of Nonexamining and Examining Physicians**

At the outset, Brumfield argues that the ALJ erred by

"rejecting" the opinions of her treating and examining physicians, and basing the determination of residual function capacity on an assessment of a nonexamining physician who did not testify at trial. Mot. (doc. 5) at 3-9. Dr. Michael J. Fairfax and Dr. Daniel Freberg are both physicians who examined Brumfield and provided opinions regarding her condition. A.R. (doc. 3) at 23. On the other hand, Dr. Paul S. Drinkwater is a physician who provided a consultative examination of Brumfield. Id. at 22. Finally, Dr. Alan Lockwood is a state agency physician who provided an opinion regarding Brumfield's condition. Id. at 177-184.

First, Brumfield argues that the ALJ committed an error of law when he "rejected" the opinions of examining physicians, Dr. Fairfax and Dr. Freberg, based on the ALJ's own belief that such opinions were not supported by the record. Mot. (doc. 6) at 5-7. Brumfield asserts that the ALJ, in his decision, failed to state what was lacking from the records or what part of the medical record contradicted the physicians' opinions, constituting their rejection. Id. at 6. Thus, she contends that the ALJ's decision to reject the treating physicians' opinions may have been "based on his own assessment," which, Brumfield asserts, goes beyond the abilities of an administrative law judge. Id. at 6.

A treating physician's opinion is afforded greater weight than that of a non-treating physician. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). However, a treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Id. "[T]he ALJ need not accept a treating physician's opinion which is "brief and

- 6 -

1 conclusionary in form with little in the way of clinical findings
2 to support [its] conclusion."   Id.

3      Furthermore, the Commissioner must provide "clear and
4 convincing" reasons for rejecting the uncontradicted opinion of an
5 examining physician.   See Lester v. Chater, 81 F.3d 821, 830 (9th
6 Cir. 1996).   Even if the opinion is contradicted by another
7 doctor, it can only be rejected for specific and legitimate
8 reasons that are supported by substantial evidence in the record.
9 Id. at 830-31.   "The opinion of a nonexamining physician cannot by
10 itself constitute substantial evidence that justifies the
11 rejection of the opinion of either an examining physician or a
12 treating physician."   Id. at 831.

13      In the case at bar, only Dr. Fairfax opined that Brumfield
14 should be "considered disabled." A.R. (doc. 3) at 135.   However,
15 Dr. Freberg, Brumfield's treating physician, noted in a checklist
16 form that he believed Brumfield suffered from moderate to
17 moderately severe pain and fatigue, and that, in his opinion, she
18 could not sustain work on a regular and continuing basis.   Id. at
19 219-22.   The ALJ rejected these opinions, stating that they were
20 not supported by the record.

21      Dr. Fairfax examined Brumfield on September 30, 2003 on a
22 referral from Dr. Freberg.   A.R. (doc. 3) at 23.   In regard to Dr.
23 Fairfax's opinion, the ALJ noted that Dr. Fairfax provided no
24 explanation for his summary conclusion that Brumfield was
25 disabled, and that, in any event, such an opinion was inconsistent
26 with Dr. Fairfax's own findings.   Id.

27          Dr. Fairfax's conclusion was inconsistent with his
           own findings which showed little findings as to
28          fibromyalgia and her hand impairments did not

> support significant functional limitations. The
> claimant's medications helped her condition. The
> claimant was being seen on an as needed basis.

Id.  The ALJ noted that Dr. Fairfax provided no explanation for

his opinion that Brumfield was disabled, with diagnoses of

fibromyalgia and carpal tunnel syndrome.  Id.  In addition, the

ALJ noted that Dr. Fairfax's examination "disclosed no gross motor

or sensory deficits [and]...[d]eep tendon reflexes were intact and

symmetric of the upper and lower extremities."  Id.

> Records were reviewed, with a previous MRI of the
> cervical spine showing no significant abnormality.
> Recent laboratory studies indicated a normal CBC,
> and chemistry profile. Her rheumatoid factor was
> negative on two occasions. The sedimentation rate
> was normal and ANA was negative.[1]

A.R. (doc. 3) at 23.  For these reasons, the ALJ rejected Dr.

Fairfax's conclusion that Brumfield was disabled.

Dr. Freberg was Brumfield's treating physician.  A.R. (doc.

3) at 23.  In regard to Dr. Freberg's opinion, the ALJ explained

that there were no records from Dr. Freberg that supported his

opinion. A.R. (doc. 3) at 23.  On April 29, 2004, Freberg signed

a pain questionnaire where he indicated that Brumfield had

moderate to moderately severe pain.  Id. at 219-20.  Additionally,

Dr. Freberg noted that Brumfield's pain ranged from "often" to

"frequently" interfering with attention and concentration,

persistence, or pace.  Id.  Finally, Dr. Freberg indicated in a

fatigue residual functional capacity questionnaire, reported on

---

[1] Defendants, in their response, note that "[e]levated blood
levels of rheumatoid factor, ANA and erythrocyte sedimentation rate
(ESR) are indications of rheumatoid arthritis."  Resp. & Cross-Mot.
(doc. 12) at 5 n.2, citing The Merck Manual of Diagnosis and Therapy,
417-418 (17th ed. 1999).

1  the same day, that Brumfield had moderately severe to severe

2  fatigue, causing interference with attention and concentration,

3  causing an inability to sustain work on a regular and continuing

4  basis.  Id. at 221-22.  All of these opinions were expressed in

5  checklist forms with no explanations.  Id. at 219-22.

6      The ALJ, in his decision, notes that Dr. Freberg provided no

7  specific functional findings to support his pain analysis.  A.R.

8  (doc. 3) at 23.  In relation to Dr. Freberg's conclusions

9  regarding Brumfield's mental limitations, the ALJ found that such

10 conclusions were not consistent with the record.  Id. at 24.  The

11 ALJ notes that Dr. Steven Hirdes, an examining psychologist,

12 concluded that Brumfield suffered from a "major depressive

13 disorder, single episode, moderate."  Id.  He points out that Dr.

14 Hirdes expressed mainly mild limitations, none of which precluded

15 the ability to function in a work or social setting.  Id.

16 Furthermore, the ALJ notes that this analysis was "confirmed by

17 other functional mental assessments by state agency physicians."

18 Id.  Thus, the ALJ determined that, "[t]he mental limitations

19 stated...by Dr. Freberg are rejected, as they are not consistent

20 with the record and there was very little mention in his notes of

21 a mental problem and no functional assessment at all."  A.R. (doc.

22 3) at 24.  "[T]he ALJ need not accept a treating physician's

23 opinion which is "brief and conclusionary in form with little in

24 the way of clinical findings to support [its] conclusion."

25 Magallanes, 881 F.2d at 751.  As a result, the ALJ rejected Dr.

26 Freberg's conclusions as a whole, "as there were no records

27 submitted by him to support any severe impairments at all."  Id.

28 at 23.

1    In her motion, Brumfield does not directly dispute the ALJ's

2    statement that Dr. Freberg provided no specific functional

3    findings to support his pain analysis.   Instead, Brumfield seems

4    to assert that the ALJ's decision was inappropriately based on the

5    fact that Dr. Freberg did not provide a functional assessment.

6    Mot. (doc. 5) at 7.   The Court disagrees.   As described above, the

7    ALJ, in his decision, explains his rejection of Dr. Freberg's

8    opinion with specific and legitimate reasons that are supported by

9    substantial evidence in the record.   Such decision was not based

10   merely on Dr. Freberg's lack of a functional assessment.

11   When presented with conflicting medical opinions, the ALJ

12   must determine credibility and resolve the conflict.   Batson v.

13   Commissioner of the Social Security Administration, 359 F.3d 1190,

14   1195 (9th Cir. 2004).   Greater weight must be given to the

15   opinions of examining physicians, and in the case of a conflict

16   the ALJ must give specific, legitimate reasons for disregarding

17   the opinion of such a physician.   Lester, 81 F.3d at 830-31.

18   Here, these rules were satisfied, as the ALJ gave specific and

19   legitimate reasons to question Dr. Fairfax's and Dr. Freberg's

20   opinions on the degree of Brumfield's impairment.   The fact that

21   the ALJ did not give Dr. Fairfax's and Dr. Freberg's opinions the

22   weight Brumfield desires does not create an error of law.

23   Second, Brumfield asserts that the ALJ committed an error of

24   law when he based his determination of residual function capacity

25   ("RFC")[2] on the assessment of a nonexamining physician who did not

26   _____

27       [2]A claimant's residual functional capacity is what he can still
     do  despite  his  physical,  mental,  nonexertional,  and  other
28   limitations.   See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th

1  testify at trial or review the entire record.  Mot. (doc. 5) at 8-
2  9.  Specifically, Brumfield asserts that the ALJ improperly
3  adopted the "limitation to 'low stress' work" and "paragraph B
4  ratings" of a state agency physician's report.  Id. at 8.  She
5  argues that the Ninth Circuit only allows the Commissioner to rely
6  on the opinions of nonexamining physicians in order to deny
7  benefits when such physicians testify at trial.  Id., citing
8  Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995); Andrews v.
9  Shalala, 53 F.3d 1035, 1038-39 (9th Cir. 1995); Magallanes, 881
10 F.2d at 752.  In addition, Brumfield contends that the state
11 agency physicians' opinions are not reliable as he did not
12 consider evidence that was submitted after his assessments.  Mot.
13 (doc. 5) at 9.  Thus, Brumfield argues that "[t]he ALJ decision,
14 founded on vocation expert testimony that in turn was based on
15 assumptions not supported by substantial evidence–namely, on the
16 opinions of nonexamining state agency physicians–is itself not
17 supported by substantial evidence."  Id.
18      The opinions of treating and examining physicians are
19 entitled to greater weight than the opinions of nonexamining
20 physicians.  Lester, 81 F.3d at 830.  Although Brumfield correctly
21 states the law that an ALJ may not solely base his decision to
22 deny benefits on the opinion of a nonexamining physician, such a
23 situation is not the case here.
24      In the case at bar, the disputed state agency opinion appears
25 to be Dr. Alan Lockwood's report, dated June 19, 2003.  A.R. (doc.
26 3) at 177-184.  Dr. Lockwood recommended "light level limitations"
27 _____
28 Cir. 1989); 20 C.F.R. § 404.1545 (2005).

1   as opposed to a prior assessment that recommended "medium level
2   limitations." Id. at 183.  Dr. Lockwood explained that he
3   recommended "light level limitations" because the updated medical
4   evidence in the record supported such a result.  Id.  In any
5   event, the ALJ did not solely rely on Dr. Lockwood's opinion in
6   determining Brumfield's RFC.
7       In his decision, the ALJ cites numerous reports and records
8   from different doctors as evidence indicating that Brumfield can
9   perform light work with some limitations.  A.R. (doc. 3) at 22-24
10  (citing evidence from the reports of Dr. Alan Lockwood, Family
11  Health Care, Dr. Paul Drinkwater, M.D., Dr. Michael Fairfax, D.O.,
12  Dr. William Mora, M.D., Dr. Kenneth Root, M.D., and Dr. Steven
13  Hirdes, Ed.D.).  In addition, the ALJ cites Brumfield's own
14  testimony to support his decision.  He notes that Brumfield
15  testified that she volunteers for her church, does her own
16  cleaning, laundry, cooking, transports her disabled friend and
17  does not use any ambulatory devices.  Id. at 25.  The ALJ also
18  points out that Brumfield testified that she manages her own
19  finances, can walk and goes door to door, exercises at the gym and
20  on an exercise bike, socializes with friends, goes out for dinner
21  and can travel, as she went to San Diego for one week after her
22  alleged onset date of disability.  Id.  The decision shows that
23  the ALJ considered the entire record in determining Brumfield's
24  RFC.  Thus, the Court does not find that the ALJ's consideration
25  of the nonexamining state agency physician's opinion was improper.
26      **B. Alleged Requirement of "Objective Evidence of Significant
27  Fatigue"**
28      In her motion, Brumfield challenges the ALJ's comment that

1  "[t]here was no objective evidence of significant fatigue." Mot.
2  (doc. 5) at 10.  It is not clear to the Court exactly what
3  Brumfield alleges was improper about the ALJ's statement.
4  However, it seems that Brumfield believes that the ALJ improperly
5  discounted the severity of her symptom of fatigue by exclusively
6  requiring "objective evidence" to support the severity of her
7  claim.  The Court is not convinced that this is the case.

8       At the outset, the Court notes that Brumfield has not
9  complained that she suffers from Chronic Fatigue Syndrome, however
10 she asserts that her carpal tunnel syndrome, fibromyalgia, and
11 depression result in fatigue.  A.R. (doc. 3) at 21.  In his
12 decision, the ALJ notes the lack of objective evidence of
13 significant fatigue in connection with his discussion of Dr.
14 Drinkwater's examination and its consistency with the medical
15 evidence in the record.  Id. at 23.  The Court is not convinced,
16 as Brumfield argues, that the ALJ's decision to deny her benefits
17 was based entirely upon the lack of objective evidence of
18 significant fatigue.  Upon review of the ALJ's decision, it is
19 evident to the Court that the ALJ considered the entire record in
20 this case, including Brumfield's own statements about her claimed
21 symptoms and activities, in finding her not disabled.

22      **C. Hypothetical Question**

23      In her motion, Brumfield contends that the ALJ committed a
24 legal error when he posed a specific hypothetical question to the
25 vocational expert, which included a limitation to "low-stress jobs
26 with low production quotas." Mot. (doc. 5) at 11-13.  Brumfield
27 asserts that the problem with the ALJ's assessment of "low-stress
28 jobs with low production quotas" is that the RFC upon which that

1   assessment was based "falls short of the function-by-function

2   assessment required by Social Security Ruling 96-8p."  Reply (doc.

3   19) at 9.  In short, Brumfield challenges the process by which the

4   ALJ reached his mental RFC determination.  Id. at 10.  Although it

5   is not clear to the Court exactly what Brumfield alleges was

6   improper about the ALJ's determination, it seems that she is

7   asserting that the ALJ erred by not performing a function-by-

8   function comparison between her RFC and her past relevant work.

9        Social Security Ruling 96-8p discusses issues regarding the

10  RFC assessment and its use at steps 4 and 5 of the sequential

11  evaluation process.  Social Security Ruling 96-8p, 1996 SSR LEXIS

12  5, at *8.

13          RFC may be expressed in terms of exertional
            category, such as light, if it becomes necessary
14          to assess whether an individual is able to do
            his...or her past relevant work as it is generally
15          performed in the national economy. However,
            without the initial function-by-function
16          assessment of the individual's physical and mental
            capacities, it may not be possible to determine
17          whether the individual is able to do past relevant
            work as it is generally performed in the national
18          economy because particular occupations may not
            require all of the exertional and nonexertional
19          demands necessary to do the full range of work at
            a given exertional level.

20

21  Id. at **8-9.  Brumfield notes that the Commissioner recognized in

22  Social Security Ruling 85-15 that the basic mental demands of

23  competitive, remunerative, unskilled work include:

24          ...the abilities (on a sustained basis) to
            understand, carry out, and remember simple job
25          instructions; to respond appropriately to
            supervision, coworkers, and usual work situations;
26          and to deal with changes in a routine work
            setting.

27

28  Mot. (doc. 5) at 12 n.28 (citing Social Security Ruling 85-15,

1  1985 SSR LEXIS 20, at *11).  The Ninth Circuit, however, has

2  stated that it has "never required explicit findings at step four

3  regarding a claimant's past relevant work both as generally

4  performed *and* as actually performed." Pinto v. Massanari, 249

5  F.3d 840, 845 (9th Cir. 2001).  A vocational expert merely has to

6  find that a claimant can or cannot continue his or her past

7  relevant work as defined by the regulations.[3] Id.  "The claimant

8  has the burden of proving an inability to return to his former

9  type of work and not just his former job." Villa v. Heckler, 797

10 F.2d 794, 798 (1986).  Moreover, the Ninth Circuit has found that

11 "[p]reparing a function-by-function analysis for medical

12 conditions or impairments that the ALJ found neither credible nor

13 supported by the record is unnecessary." Bayliss, 427 3d. at

14 1217.

15     Here, the ALJ found no mental limitations supported by

16 substantial evidence in the record.  A.R. (doc. 3) at 24.

17 Specifically, the ALJ cites the opinion of Dr. Steven Hirdes and

18 other functional mental assessments by state agency physicians to

19 support this finding.  Id.  In the case at bar, Dr. Hirdes opined

20 that Brumfield's ability to conduct the following activities was

21 either "unlimited" or "limited but satisfactory": (1) follow work

22

23     [3] The claimant must be able to perform:

24     1. The actual functional demands and job duties of
       a particular past relevant job; or
25     2. The functional demands and job duties of the
       occupation as generally required by employers
26     throughout the national economy.
       SSR 82-61.
27

28     Pinto, 249 F.3d at 845.

rules; (2) relate to co-workers; (3) deal with the public; (4) use judgment; (5) interact with supervisors; (6) function independently; (7) maintain attention/concentration; (8) understand, remember and carry out complex job instructions; (9) understand, remember and carry out detailed, but not complex, job instructions; (10) understand, remember and carry out simple job instructions; (11) maintain personal appearance; and (12) relate predictably in social situations.  A.R. (doc. 3) at 140-41. Moreover, a Psychiatric Review Technique form, dated April 2003, identified moderate limitations in maintaining concentration, persistence, or pace, and recommended that Brumfield could function occupationally.  Id. at 155-168.  The RFC that followed found no significant limitations in Brumfield's mental ability to perform certain sustained work and social activities over a normal workday and workweek on an ongoing basis.  Id. at 169-172. Another Psychiatric Review Technique form identified as "mild" Brumfield's restrictions of activities of daily living, and difficulties in social functioning and maintaining concentration, persistence, or pace.  Id. at 187-200.  Again, the RFC that followed found no evidence of limitations in Brumfield's mental ability to perform certain sustained work and social activities over a normal workday and workweek on an ongoing basis.  Id. at 203-05.

The ALJ found no mental limitations supported by substantial evidence in the record.  A.R. (doc. 3) at 24 ("The claimant's mental condition was stable and the residual functional capacity has been adjusted to reflect the limitations caused by her impairments.").  Accordingly, a function-by-function analysis for

such mental impairments was unnecessary.  <u>Bayliss</u>, 427 3d. at
1217.

In regard to the contested hypothetical question, vocational
expert Sandra K. Richter was present during Brumfield's hearing.
A.R. (doc. 3) at 263.  She identified Brumfield's past relevant
work as a file clerk with light level exertion.  <u>Id.</u> at 279-281.
In addition, she concluded that Brumfield had also worked as a
proof clerk at the sedentary level.  <u>Id.</u>  In response to the ALJ's
hypothetical questions, Richter opined that an individual with
conditions similar to Brumfield could work, at a minimum, as a
proof clerk.  <u>Id.</u> at 282-84.  In light of the discussion above,
the Court finds that the hypothetical the ALJ posed to Richter
contained all of the limitations that the ALJ found credible and
supported by substantial evidence in the record.  A hypothetical
including mental limitations was unnecessary in light of the ALJ's
finding that there was no substantial evidence that supported the
existence of such limitations.  A.R. (doc. 3) at 24.  Thus, the
ALJ's reliance on the testimony Richter gave in response to the
contested hypothetical question was proper.

**D. Opinion of Steven C. Hirdes, Ed.D.**

Brumfield argues that the Court should remand this matter for
payment of benefits due to the ALJ's alleged mischaracterization
of the opinion of Dr. Steven C. Hirdes, Ed.D.  Mot. (doc. 5) at
13-15.  Specifically, Brumfield challenges the ALJ's statement
that Dr. Hirdes found "mainly mild limitations...none of which
precluded the ability to function in a work or social setting[.]"
<u>Id.</u> at 14; <u>see also</u> A.R. (doc. 3) at 24.  Brumfield asserts that
the ALJ's statement is "only partially true," noting that Dr.

1  Hirdes opined that Brumfield was "seriously limited but not

2  precluded" from dealing with work stresses, behaving in an

3  emotionally stable manner, and demonstrating reliability.   Mot.

4  (doc. 5) at 14.   Additionally, Brumfield argues that, "by

5  definition a person who is seriously limited does not suffer from

6  mild limitations."  Id.  Consequently, Brumfield contends that the

7  ALJ improperly mischaracterized Dr. Hirdes' opinion.  Id.

8       In his report, Dr. Hirdes opined that Brumfield was

9  "seriously limited but not precluded" from dealing with work

10 stresses, behaving in an emotionally stable manner, and

11 demonstrating reliability.  A.R. (doc. 3) at 140-141.   However,

12 Dr. Hirdes also noted in his report that Brumfield's ability to

13 conduct the following list of activities was either "unlimited" or

14 "limited but satisfactory": (1) follow work rules; (2) relate to

15 co-workers; (3) deal with the public; (4) use judgment; (5)

16 interact with supervisors; (6) function independently; (7)

17 maintain attention/concentration; (8) understand, remember and

18 carry out complex job instructions; (9) understand, remember and

19 carry out detailed, but not complex, job instructions; (10)

20 understand, remember and carry out simple job instructions; (11)

21 maintain personal appearance; and (12) relate predictably in

22 social situations.  Id.  Brumfield does not seem to challenge the

23 reasonableness of characterizing the limitations defined as either

24 "unlimited" or "limited but satisfactory" as "mild."  Therefore,

25 it is appropriate to characterize Dr. Hirdes' report, which

26 reported only three tasks out of a total of fifteen as being

27 "seriously limited but not precluded," as expressing "mainly mild

28 limitations."  The Court is not convinced that the ALJ

mischaracterized Dr. Hirdes' opinion when he stated that "[t]here were mainly mild limitations expressed, none of which precluded the ability to function in a work or social setting[.]"  A.R. (doc. 3) at 24.

**C. Brumfield's Testimony**

Brumfield's final argument is that the ALJ improperly rejected her testimony.  Mot. (doc. 5) at 15-18.  First, she asserts that the ALJ did not specifically identify what testimony was not credible.  Id. at 17.  Second, she argues that the ALJ did not provide clear and convincing reasons for finding such testimony not credible.  Id.

Once a claimant produces medical evidence of an underlying impairment which is reasonably likely to be the cause of certain subjective symptoms, the ALJ may not discredit a claimant's testimony on that issue solely because the degree of limitation alleged by the claimant is not supported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir. 1989).  The ALJ cannot reject the claimant's testimony about subjective complaints without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit that testimony.  See Bunnell, 947 F.2d at 346-47. Factors the ALJ may legitimately consider to make a credibility determination include the claimant's daily activities, treatment for relief of pain, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  Id.; Light v. Social Security Administration, 119 F.3d 789, 792-93 (9th Cir. 1997).  However,

1   the ALJ is the trier of fact.   Fair, 885 F.2d at 604.   As long as

2   the ALJ's determination was reached based on an explicit

3   consideration of the appropriate factors, it is not the reviewing

4   court's place to second-guess that determination.   Id.

5       At the hearing on May 10, 2004, Brumfield testified that she

6   is unable to work because when she tries "to do anything on a

7   regular basis, it flares up her arms...and [she] become[s] so

8   fatigued that [she] just cannot function."  A.R. (doc. 3) at 270.

9   She later clarified that she was speaking about her carpal tunnel

10  syndrome and fibromyalgia.   Id.   Additionally, Brumfield testified

11  that in using her arms and hands, she experiences "[a] lot of

12  pain."   Id.   "If I try to do things on a continuous basis, the

13  pain is more than I can handle."   Id.   She stated that she has

14  trouble gripping items, light or heavy, and has numbness in her

15  hands.   Id. at 271.   With respect to her fibromyalgia, Brumfield

16  testified that she experiences pain in her shoulders, neck, arms,

17  and back.  A.R. (doc. 3) at 271.   She stated that she left her

18  last job due to her pain and exhaustion.   Id. at 277.

19      In contrast, Brumfield also testified that she does her

20  laundry, the basic cleaning around her home, and most of the

21  cooking.   Id. at 272.   However, she maintained that "mopping" and

22  "scrubbing the venetian blinds [and] windows" are beyond her

23  abilities.   Id. at 272-273.   Brumfield stated that she drives and

24  has trouble driving only on "some days."   Id.   In addition, she

25  testified that she volunteers for her church around 30 to 40 hours

26  a month, by helping others in the congregation and going out "door

27  to door teaching others about the Bible."  A.R. (doc. 3) at 275.

28  She further testified that since the date of onset, she took a

1  week-long trip to San Diego and that she is doing low intensity

2  exercises to increase her strength.  Id. at 276.  "I have an

3  exercise bike at home, and I go and do workouts at a gym trying to

4  gain strength."  Id.  She stated that she has had no surgery for

5  her carpal tunnel syndrome and uses no ambulatory devices.  Id. at

6  270, 276, 277-78.

7      In his decision, the ALJ found that Brumfield's "subjective

8  complaints that she is unable to work are not accepted to the

9  extent alleged."  A.R. (doc. 3) at 25.  The Court believes this

10  statement clearly identifies what testimony of Brumfield's the ALJ

11  found to be not credible.  Moreover, the ALJ offered specific

12  reasons for discounting Brumfield's testimony regarding her

13  inability to work.

14      [Brumfield's] complaints and alleged limitations
        are out of proportion to the evidence. This does
15      not mean that the claimant has no limitations. To
        the contrary, the undersigned does find work
16      limitations. However, her limitations do not
        preclude all work activity. The claimant has
17      undergone conservative treatment since her alleged
        onset date of disability, with no
18      hospitalizations. The claimant stated that she
        volunteer [sic] for her church, does her own
19      cleaning, laundry, cooking, transports her
        disabled friend and does not use any ambulatory
20      devices. She also managed her own finances, can
        walk and goes door to door, exercised at the gym
21      and on an exercise bicycle, socializes with
        friends, goes out for dinner. She also can travel
22      and went to San Diego for one week, after her
        alleged onset date of disability. There is no
23      objective evidence to support significant side-
        effects from medication.

24

25  Id.

26      Brumfield argues that the ALJ failed to express sufficient

27  reasons to discredit her testimony, because (1) her ability to

28  perform limited activities of daily living fails to show the

1   ability to sustain work activities on a regular basis, and (2) the

2   ALJ failed to provide a nexus between her limited activities and

3   the ability to sustain regular work.  Mot. (doc. 5) at 17-18.  In

4   support of her arguments, Brumfield cites the opinions in <u>Benecke</u>

5   <u>v. Barnhart</u>, 379 F.3d 587 (9th Cir. 2004) and <u>Gonzalez v.</u>

6   <u>Sullivan</u>, 914 F.2d 1197 (9th Cir. 1990), respectively.  The Court

7   does not find these cases to directly discredit the ALJ's decision

8   in the case at bar.

9        In <u>Benecke</u>, the court affirmed the district court's finding

10  that the ALJ erred in discounting the claimant's testimony about

11  the severity of her symptoms.  379 F.3d at 593-94.  The court

12  noted that the ALJ, in making the credibility determination,

13  relied largely on Benecke's ability to carry out certain routine

14  tasks.  <u>Id.</u> at 594.  The court found these reasons to be

15  insufficient because, "[a]s described...Benecke's daily activities

16  are quite limited and carried out with difficulty."  <u>Id.</u>

17          At the hearing, Benecke testified to the
            following: She experiences constant pain
18          throughout her entire body. Although prescription
            pain medication reduces her pain somewhat, it
19          interferes with her ability to concentrate. Due to
            severe fatigue, she naps for one to two hours
20          daily. When awake, she spends most of her time
            sitting in a recliner because her pain increases
21          whenever she does anything else. She has been able
            to take one class at a time at Arizona State
22          University, but only with special accommodations
            from the school's disability office. She remains
23          able to drive, but driving further than five miles
            causes severe pain in her arms.

24

25  <u>Id.</u> at 592.  In contrast to the routine activities involved in

26  <u>Benecke</u>, Brumfield described activities that both required

27  exertion (walking door to door, teaching others about the Bible,

28  travel, cleaning) and are not necessary to daily life

(volunteering for her church).  A.R. (doc. 3) at 272-76.

In <u>Gonzalez</u>, the court concluded that the ALJ had failed to properly articulate reasons for discrediting the claimant's pain testimony. 914 F.2d at 1201-02.  The court noted that a possible explanation for the ALJ's determination was that the claimant had indicated that twice a day he walked one to one and a half miles, and that he sometimes watched ball games, alternating sitting and standing.  <u>Id.</u> at 1201.  However, the court pointed out that the ALJ did not specifically link these activities to explaining why he concluded that the claimant's pain testimony lack credibility, or how the ability to perform such tasks translated into the ability to perform appropriate work.  <u>Id.</u>  The court also noted that "[t]he ALJ's opinion indicated that he probably disbelieved the excess pain testimony because it was 'out of proportion to the medical evidence'-an inadequate reason, since it is the very nature of excess pain to be out of proportion to the medical evidence."  <u>Id.</u>

> While the ALJ's failure to link his discounting of the appellant's pain testimony to the appellant's testimony about his daily activities may seem to be a minor error, we are wary of speculating about the basis of the ALJ's conclusion-especially when his opinion indicates that the conclusion may have been based exclusively upon an improper reason.

<u>Id.</u>  Thus, the court seems to have made much of its decision to remand the matter on the fact that the ALJ's decision indicated that his conclusion may have been based exclusively upon his opinion that the testimony was out of proportion to the medical evidence--an improper reason.  <u>Gonzalez</u>, 914 F.2d at 1201.

Such circumstances are not the case here.  In the case at bar, the ALJ did not completely reject all of Brumfield's

testimony.  The ALJ specifically notes that he did not accept

Brumfield's subjective complaints that she is unable to work to

the extent alleged.  A.R. (doc. 3) at 25.  In his decision, the

ALJ recognizes that Brumfield has some work limitations, however,

he discredits Brumfield's testimony that she is completely unable

to work due to her pain and fatigue.  Id. ("...her limitations do

not preclude all work activity").  Unlike Benecke, Brumfield

testified that she conducts activities that both require exertion

and are not necessary to daily life.  In addition, the Court does

not find the ALJ's decision in this case to be similar to that

described in Gonzales.  Here, the Court need not speculate as to

the reasons the ALJ discredited Brumfield's testimony regarding

her ability to work.  Although the ALJ does not specifically

describe how the performance of Brumfield's activities translate

into the ability to perform appropriate work, the ALJ's opinion

also does not indicate that he disbelieved her testimony regarding

her ability to work because it was "out of proportion to the

medical evidence."  Thus, the Court need not be as cautious as the

court in Gonzales.

     The Ninth Circuit has recognized that disability claimants

should not be penalized for attempting to lead normal lives in the

face of their limitations.  Reddick v. Chater, 157 F.3d 715, 722

(9th Cir. 1998).  "Only if the level of activity were inconsistent

with Claimant's claimed limitations would these activities have

any bearing on Claimant's credibility."  Such circumstances are

evident in this case.  Id.  Contrary to Brumfield's assertion,

there are sufficient reasons addressed to Brumfield's testimony

that support the ALJ's credibility determination.  An ALJ is

permitted to reject testimony regarding subjective symptoms as
long as he makes specific findings justifying that decision.
Fair, 885 F.2d at 604.  Here, the Court concludes that the ALJ
made the requisite specific findings, and there is substantial
evidence to support his decision.

**IV. Conclusion**

Upon review of each of Brumfield's challenges to the ALJ's
decision, the Court finds that the ALJ fulfilled his
responsibility to consider the medical evidence, and the record as
a whole, in making specific findings concerning Brumfield's
alleged disability.  The evidence cited by the ALJ in his decision
is relevant evidence that a reasonable mind might accept as
adequate to support his conclusion that Brumfield in not disabled.
Although some of the evidence highlighted by Brumfield is possibly
susceptible to more than one interpretation, the district court
must uphold the ALJ's decision.  Id.  Therefore, the Court finds
that the ALJ's decision is supported by substantial evidence.

Therefore,

IT IS ORDERED that Brumfield's motion for summary judgment
(doc. 5) is DENIED.

IT IS FURTHER ORDERED that Defendant's cross-motion for
summary judgment (doc. 12) is GRANTED.  The court clerk is
directed to enter JUDGMENT for Defendant and terminate this case.

DATED this 19th day of June, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

- 25 -

1    Copies to counsel of record